UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SANDRA DER and GORDON DER, individually and as parents and natural guardians for G.D., a minor,<br><br>Plaintiffs,<br><br>v.<br><br>SEAN CONNOLLY, in his individual and official capacity; MIKE AMMEND, in his individual and official capacity; and ISANTI COUNTY,<br><br>Defendants. | Case No. 08-CV-6409 (PJS/JJG)<br><br>ORDER ON POST-TRIAL MOTIONS AND BILL OF COSTS |

Joseph J. Walsh and Richard W. Curott, CUROTT & ASSOCIATES, LLC, for plaintiffs.

Jason M. Hiveley, IVERSON REUVERS, LLC, for defendants.

Plaintiffs Sandra Der and Gordon Der, on their own behalf and on behalf of their son, G.D., brought this action under 42 U.S.C. § 1983 and state law, seeking damages for injuries allegedly suffered when defendant Sean Connolly, a police officer, entered the Ders' house without a warrant in April 2008. The case was tried to a jury, which found in favor of Connolly. (The Ders' claims against defendants Mike Ammend and Isanti County were dismissed before trial.)

The Ders move for a new trial. Connolly seeks attorney's fees and costs.[1] For the reasons that follow, the Court denies the Ders' new-trial motion, denies Connolly's motion for attorney's fees, and disallows certain expert-witness fees that Connolly seeks in his bill of costs.

I. MOTION FOR NEW TRIAL

In moving for a new trial, the Ders argue that the Court erred in eight different ways in its rulings before and during trial. Nothing that the Ders say in support of their new-trial motion persuades the Court that any of its earlier rulings was erroneous. Because the record in this case, including the transcripts of the pretrial conference and the trial, already reflects the Court's reasons for the rulings that the Ders challenge, the Court addresses only a few of the Ders' arguments, and those only briefly.

*A. Presumptions and the Burden of Proof*

Three of the Ders' eight arguments relate to the appropriate legal standard for establishing a Fourth Amendment violation in a civil suit under 42 U.S.C. § 1983. According to the Ders, the Court erred in instructing the jury that the Ders had the burden of proving that their rights were violated. Instead, say the Ders, the Court should have instructed the jury that Connolly had the burden of proving that the rights of the Ders were *not* violated. Specifically, the Ders allege that the Court should have instructed the jury to presume that Connolly's warrantless entry into the

---

[1] The motion for attorney's fees appears to be brought on Connolly's behalf only, as he is the only defendant named in the caption of the motion. Mot. for Atty's Fees & Expert Witnesses' Fees [Docket No. 203]. The bill of costs appears to be brought on behalf of all defendants. The caption identifies "Isanti County, et al." as the defendants. Bill of Costs [Docket No. 197]. For ease of exposition, the Court generally refers to Connolly as the party seeking costs and fees. Nothing turns on whether Connolly alone seeks fees or all three defendants do.

Ders' home violated the Fourth Amendment and to find Connolly liable unless Connolly proved that his entry was justified by an exception to the warrant requirement.

As an initial matter, the Court notes that its ruling almost certainly had no impact on the jury's verdict. In a civil case in which a claim must be proved by a preponderance of the evidence, the burden of proof functions as a tie breaker. In this case, for example, the question of who had the burden of proof would have mattered only if the jury found that the weight of the evidence favoring a proposition was *precisely* the same as the weight of the evidence opposing that proposition. Only if the jury found such a "tie" would it matter who was assigned the burden of proof. The jurors in this case returned a quick and emphatic verdict that made it clear that they rejected the Ders' version of events and credited Connolly's. It is extremely unlikely that the jury turned to the burden of proof to break a "tie." Thus, under the circumstances of this case, the question of who had the burden of proof is likely academic.

That said, the Court is confident that it did not err in assigning the burden of proof to the Ders. This is a civil case, and, in a civil case, the plaintiff bears the burden of proof. There is no reason why a different rule should apply in § 1983 actions. To recover, the plaintiff must prove that she was "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. If the plaintiff does not carry her burden, she should not be able to recover damages.

The Ders' theory would stand the normal rule on its head and place the burden of proof in a § 1983 action on the defendant. The plaintiff would merely need to file a § 1983 action against a defendant, and, unless the defendant could prove that he acted lawfully, the plaintiff would prevail. In this case, for example, the Ders would merely need to file a § 1983 action alleging

that Connolly's entry into their home was unlawful. At trial, the Ders would not need to offer any proof whatsoever that their allegation was true. Rather, they could sit back and demand that *Connolly* prove by a preponderance of the evidence that his actions were lawful. If Connolly failed to do so, the Ders would prevail.

The Court rejects the Ders' theory and instead follows the majority of federal appellate courts to have addressed the burden-of-proof question in § 1983 actions involving a warrantless search or arrest. Those courts — the Second, Fifth, Seventh, Ninth, and Eleventh Circuits — place the ultimate burden of proof entirely on the plaintiff, though some courts do impose on the defendant a burden of production.[2]

Only two federal appellate courts, the Third and Sixth Circuits, undisputably place the burden of proof on the defendant in a § 1983 action. *Losch v. Borough of Parkesburg*, 736 F.2d

---

[2]*See Davis v. Rodriguez*, 364 F.3d 424, 433 n.8 (2d Cir. 2004) (treating the question as open and, without deciding it, following the Fifth and Eleventh Circuits in placing burden on plaintiff of showing lack of probable cause for warrantless arrest); *Dubner v. City & County of San Francisco*, 266 F.3d 959, 965 (9th Cir. 2001) (placing "burden of production" on defendant to "provide some evidence" of probable cause to support warrantless arrest, but leaving "ultimate burden of proof" on plaintiff); *Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998) (holding, in warrantless-arrest case, that "plaintiffs had the burden of demonstrating the absence of probable cause in order to succeed in their § 1983 claim"); *Valance v. Wisel*, 110 F.3d 1269, 1278-79 (7th Cir. 1997) (adopting burden-shifting test that places ultimate burden on plaintiff; specifically, holding that if a defendant police officer produces evidence that a plaintiff consented to a warrantless search, "the plaintiff would be required to show either that he never consented or that the consent was invalid because it was given under duress or coercion"); *Ruggiero v. Krzeminski*, 928 F.2d 558, 563 (2d Cir. 1991) (same burden-shifting approach in warrantless-search case, placing "ultimate risk of nonpersuasion" on plaintiff and rejecting argument that defendant police officer has "the burden of proving that the official action was reasonable"); *Crowder v. Sinyard*, 884 F.2d 804, 825-26 (5th Cir. 1989) ("[W]e cannot agree that the burden of proof in a section 1983 case based upon an alleged fourth amendment violation should be shifted to state officials once the plaintiff establishes that the officials' actions were not authorized by a warrant. . . . [T]he burden of proof on the issue of whether the items seized were in plain view rests on the plaintiff in a section 1983 action based upon a warrantless search which defendants seek to justify under that exception to the warrant requirement.").

903, 909 (3d Cir. 1984) (observing, in § 1983 action for malicious prosecution, that "defendants bear the burden at trial of proving the defense of good faith and probable cause"); *Tarter v. Raybuck*, 742 F.2d 977, 980 (6th Cir. 1984) (stating without authority, in school-search case, that on consent question,"[t]he burden would be upon defendants to demonstrate such a voluntary relinquishment of constitutional rights by plaintiff"). The Massachusetts Supreme Court does likewise. *Tyree v. Keane*, 507 N.E.2d 742, 746 (Mass. 1987). And the Tenth Circuit has made an ambiguous statement that could be read to place on the defendant either the burden or proof or a burden of production. *Karr v. Smith*, 774 F.2d 1029, 1031 (10th Cir. 1985) ("The burden of going forward with evidence establishing the existence of probable cause is on the defendant in a 1983 action."). The minority of cases placing the burden on the defendant tend to be much older than the majority of cases placing the burden on the plaintiff.

The Eighth Circuit has not expressly decided who bears the burden of proof in a § 1983 action for a warrantless arrest or search, and language in *Creighton v. City of St. Paul*, 766 F.2d 1269 (8th Cir. 1985), can be read to support placing the burden on either the plaintiff or the defendant. *Compare id.* at 1272-73 (holding that defendant police officer "was not entitled to summary judgment because he has not proved . . . that he had probable cause" for a warrantless entry) *with id.* at 1277 ("If the [plaintiffs] can prove that the officers did not ask for permission to enter and did not explain their mission . . . then . . . the jury could find that the entry was not peaceable."). And in *Huotari v. Vanderport*, a § 1983 action challenging a warrantless search, Judge Heaney (sitting by designation as a district-court judge) said that "defendants' reliance on the defense of consent to validate the search places upon them the burden of proving that consent was, in fact, 'freely and voluntarily given.'" 380 F. Supp. 645, 648 (D. Minn. 1974). But to

support this assertion, Judge Heaney cited only cases involving suppression in *criminal* proceedings. *Id.* Such cases are obviously distinguishable, given that, in a criminal case, the government clearly has the burden of proving that its evidence is admissible.

The Eastern District of Virginia has expressly rejected *Huotari* and *Tarter* in favor of the burden-shifting approach taken by the Second Circuit in *Ruggiero v. Krzeminski*, 928 F.2d 558, 563 (2d Cir. 1991). *Amato v. City of Richmond*, 875 F. Supp. 1124, 1134 (E.D. Va. 1994) ("[T]he better response to the fact that warrantless searches are presumptively unreasonable is to require the defendant to produce evidence of voluntary consent, leaving with the plaintiff the ultimate burden of non-persuasion. To hold otherwise would alter the fundamental burden of proof in a civil case and would allow civil plaintiffs to prevail by simply *pleading*, rather than *proving*, that the search violated his [*sic*] rights.").

The Court likewise rejects *Huotari*. Again, a § 1983 action is a civil suit, and, as is almost always true in civil suits, the plaintiff bears the burden of proof. And even if the Court assumes, without deciding, that the defendant in a warrantless-search case bears a burden of *production* and must offer some evidence that a challenged search was lawful, this would not entitle the Ders to a new trial, because Connolly unquestionably met this burden of production when he testified at trial.

### B. Exigent Circumstances

Connolly argued at trial that his warrantless entry into the Ders' home was justified by exigent circumstances. The Ders asked the Court to instruct the jury that a warrantless entry is justified by exigent circumstances only if those circumstances involve "danger to life or limb." *See* Mem. Supp. Pl. Mot. New. Trial at 7 [Docket No. 208]. This is clearly not the law.

According to *United States v. Quezada*, "[a] police officer may enter a residence without a warrant as a community caretaker where the officer has a reasonable belief that an emergency exists requiring his or her attention." 448 F.3d 1005, 1007 (8th Cir. 2006). In *Michigan v. Fisher*, the Supreme Court emphatically rejected the precise argument now made by the Ders — to wit, that the "emergency" justifying a warrantless entry must involve danger to life or limb:

> Officers do not need ironclad proof of "a likely serious, life-threatening" injury to invoke the emergency aid exception. The only injury police could confirm in *Brigham City* [*v. Stuart*, 547 U.S. 398 (2006)] was the bloody lip they saw the juvenile inflict upon the adult. Fisher [i.e., the criminal defendant challenging the entry] argues that the officers here could not have been motivated by a perceived need to provide medical assistance, since they never summoned emergency medical personnel. This would have no bearing, of course, upon their need to assure that Fisher was not endangering someone else in the house. Moreover . . . the test, as we have said, is . . . whether there was "an objectively reasonable basis for believing" that medical assistance was needed, or persons were in danger, *Brigham City*, *supra*, at 406; *Mincey* [*v. Arizona*, 437 U.S. 385, 392 (1978)]. . . . It sufficed to invoke the emergency aid exception that it was reasonable to believe that Fisher had hurt himself (albeit nonfatally) and needed treatment that in his rage he was unable to provide, or that Fisher was about to hurt, or had already hurt, someone else.

130 S. Ct. 546, 549 (2009) (per curiam); *see also Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) ("[L]aw enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.").

This Court instructed the jury that, with respect to whether an emergency justified Connolly's warrantless entry, "an 'emergency' exists if a person needs immediate aid." Final Jury Insts. at 5 [Docket No. 191]. This instruction is entirely consistent with *Quezada*, *Fisher*, and *Brigham City*. In particular, the term "immediate," which modifies "aid," sufficiently limits

the circumstances that would justify a warrantless entry under what *Fisher* called the "emergency aid" exception. Someone with a hangnail might need aid, but he does not need immediate aid; someone with a more serious injury (or reasonably believed to have a more serious injury) would need immediate aid. The Court was not required to specify the types of situations that would call for "immediate aid," as this is something that a jury can readily decide for itself.

### C. Evidentiary Rulings

The Ders also contend that various of the Court's evidentiary rulings were so erroneous that a new trial is warranted. The only evidentiary issue that merits comment is the Ders' contention that they should have been allowed to introduce Connolly's psychological records.

As the Court explained at the pretrial conference, even if the records were assumed to be relevant (and not privileged), an expert would need to explain *why* they were relevant. The Ders were not prepared to present expert testimony; instead, they proposed to simply introduce medical records and invite the laypersons on the jury to draw medical conclusions about Connolly's medical condition. Although the Ders complain that the Court did not allow them to obtain such an expert, the Ders continue to ignore the fact that it was their own fault that they were unable to call an expert to testify about Connolly's psychological condition and records.

On November 30, 2009, Magistrate Judge Jeanne J. Graham issued an order denying, among other things, the Ders' informal request to obtain an expert opinion with respect to Connolly's psychological records. Order Nov. 30, 2009 (entered Dec. 1, 2009) [Docket No. 67]. The Ders appealed the order. In denying the appeal, the Court said:

> With respect to plaintiffs' request for permission to obtain an expert report on Connolly's psychological records: The deadline for filing nondispositive motions was November 1, 2009. Docket

> No. 27 ¶ 6. Although plaintiffs obtained Connolly's psychological records in August, plaintiffs did not bring a motion seeking an expert report on Connolly's psychological records before the November 1 deadline. Instead, plaintiffs made an informal request for this relief in their November 10 memorandum opposing defendants' motion to seal and strike the records. *Plaintiffs' informal request is clearly untimely.* Plaintiffs may not use "informal requests" as a way of circumventing nondispositive-motions deadlines. For that reason alone, Judge Graham's denial of plaintiffs' request is neither clearly erroneous nor contrary to law.

Order Jan. 4, 2010 at 2 (emphasis added) [Docket No. 76].

The Ders do not deny that their request was untimely; instead, they now characterize their failure to timely move for permission to obtain an expert opinion as a mere "procedural technicalit[y]" that the Court should have overlooked. Mem. Supp. Pl. Mot. New. Trial at 13. But this Court could not function if parties were allowed to dismiss scheduling deadlines as "procedural technicalities." As the Eighth Circuit has repeatedly recognized, "[c]ourts have a legitimate interest in the enforcement of scheduling deadlines, both to manage a pending case and to retain the credibility of these deadlines in future cases." *United States v. Trobee*, 551 F.3d 835, 838 (8th Cir. 2009); *see also United States v. 1948 S. Martin Luther King Dr.*, 270 F. 3d 1102, 1110 (7th Cir. 2001) ("Courts have a legitimate interest in ensuring that parties abide by scheduling orders to ensure prompt and orderly litigation.").

There is an established method for extending pretrial deadlines: Under Fed. R. Civ. P. 16(b)(4), a scheduling order may be modified "only for good cause and with the judge's consent." When a party blows a deadline and fails to show good cause for blowing the deadline, enforcing the deadline is not a "procedural technicality." It is exactly what parties, including the Ders, should expect a court to do.

## II. ATTORNEY'S FEES

Under 42 U.S.C. § 1988(b), the Court may, in its discretion, award "a reasonable attorney's fee" to a party (such as Connolly) who prevails in a § 1983 action. The Court finds that an award of attorney's fees to Connolly is not warranted under the circumstances.

The mere fact that a jury found in Connolly's favor and against the Ders does not entitle Connolly to attorney's fees under §1988(b). Indeed, only in "very narrow circumstances" is a prevailing defendant in a civil-rights case entitled to an award of attorney's fees. *Eichman v. Linden & Sons, Inc.*, 752 F.2d 1246, 1248 (7th Cir. 1985); *Williams v. City of Carl Junction*, 523 F.3d 841, 843 (8th Cir. 2008) (indirectly citing *Eichman*). Specifically, a prevailing defendant is entitled to attorney's fees under § 1988 only if the plaintiff's claim was "frivolous, unreasonable, or groundless, or . . . the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978); *Flowers v. Jefferson Hosp. Ass'n*, 49 F.3d 391, 392 (8th Cir. 1995) (applying *Christiansburg Garment Co.* standard to claim for attorney's fees under § 1988).

The Ders' position in this case, although underwhelming in the Court's eyes, and rejected quickly and completely by the jury, was not "frivolous, unreasonable, or groundless." The case boiled down to a dispute of fact — precisely the kind of dispute that our justice system entrusts to a jury. Had the jury believed Sandra Der's version of the facts, she could have recovered on at least some of her claims. Although Connolly's evidence was stronger, and although the jury ultimately sided with him, the evidence was not so one-sided that the Ders acted frivolously in bringing their case to trial. The Court therefore exercises its discretion to deny Connolly's motion for attorney's fees.

### III. COSTS AND EXPERT-WITNESS FEES

Under Fed. R. Civ. P. 54(d)(1), the prevailing party in a federal action is generally entitled to "costs . . . other than attorney's fees . . . ." The "costs" allowable under Rule 54(d)(1) are itemized in 28 U.S.C. § 1920, which directs the prevailing party to file "[a] bill of costs . . . ."

Connolly filed a bill of costs seeking a total of $22,006.19, of which $13,350.60 represents expert-witness fees. Bill of Costs at 1 [Docket No. 197]; Hively Aff. Supp. Costs & Disbursements ¶ 5.J-.K [Docket No. 198]. But § 1920 provides, with respect to expert witnesses, that the fees of *court-appointed* experts — not of experts retained by the parties — are recoverable as "costs" under that statute. 28 U.S.C. § 1920(6). Under § 1920, an expert witness retained by a party is no different from an ordinary fact witness, and a party may recover as a "cost" for a retained expert witness only the statutory witness fee of $40 per day prescribed in 28 U.S.C. § 1821(b). *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442 (1987) (holding that under § 1920, the fee of a party's expert witness must be taxed at the same rate as the fee of an ordinary fact witness); *see also Little Rock Cardiology Clinic PA v. Baptist Health*, 591 F.3d 591, 601 (8th Cir. 2009) (citing *Crawford Fitting Co.*).

Connolly is therefore not able to recover under § 1920 the expert-witness fees that he seeks, and those fees should not have been included in the bill of costs that he submitted under Rule 54(d). Instead, to the extent that Connolly seeks expert-witness fees beyond $40 per day, he would have to do so under 42 U.S.C. § 1988(c), which provides: "In awarding an attorney's fee under [42 U.S.C. § 1988(b)] in any action or proceeding to enforce a provision of [42 U.S.C.

§ 1981 or § 1981a], the court, in its discretion, may include expert fees as part of the attorney's fee."[3]

For two reasons, the Court will not award under § 1988(c) the expert-witness fees that Connolly seeks. First, this is not a case brought under 42 U.S.C. § 1981 or § 1981a, so § 1988(c) does not allow an award of expert-witness fees.[4] Second, the Court is not awarding "an attorney's fee" of which such expert-witness fees could be a "part" under 42 U.S.C. § 1988(c). Instead, the Court awards $40 under 28 U.S.C. §§ 1821(b) for the appearance at trial on October 14, 2010 of Connolly's expert witness Dr. Thomas Gratzer.

The Ders have not objected to any portion of Connolly's bill of costs apart from the requested expert-witness fees. *See* Mem. Opp. Def. Mot. Attorney's Fees & Expert Witness Fees & Bill of Costs at 9-10 [Docket No. 209]. Because the remaining costs sought by Connolly do

---

[3]Despite having wrongly included his expert-witness fees in his bill of costs, Connolly occasionally appears to understand that he cannot seek such fees under 28 U.S.C. § 1920. *See* Def. Mem. Supp. Mot. Attorney's Fees & Expert Witnesses' Fees at 1 ("Defendant Deputy Connolly is entitled to an award of . . . expert witness costs under 42 U.S.C. § 1988 . . . ."), 5 [Docket No. 204]; *but see id.* at 9 ("Defendant respectfully requests Plaintiffs be held liable for all defense attorney's fees and, to the extent not awarded in the Bill of Costs, defense expert witnesses' fees.").

[4]In support of his motion for attorney's fees, Connolly quotes 42 U.S.C. § 1988(c) as follows: "'In awarding an attorney's fee under . . . this section . . . the court, it its discretion, may include expert witness fees as part of the attorney's fee.'" Def. Mem. Supp. Mot Attorney's Fees & Expert Witnesses' Fees at 5 (quoting § 1988(c)). This quotation omits essential qualifying language — namely, language that limits the application of § 1988(c) to "any action or proceeding to enforce a provision of section 1981 or 1981a of this title . . . ." 42 U.S.C. § 1988(c). The Court puts Connolly's counsel on notice that a future misleading quotation of authority will, if deliberate, result in counsel being sanctioned personally.

not appear to be forbidden under Rule 54(d)(1) or 28 U.S.C. § 1920, and because the Ders did not object to those costs, the Court awards Connolly $8,695.59 in costs.[5]

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Plaintiffs' motion for a new trial [Docket No. 196] is DENIED.

2. Defendant Sean Connolly's motion for attorney's fees and expert-witness fees [Docket No. 203] is DENIED.

3. Plaintiffs' objection [Docket No. 209] to defendants' bill of costs [Docket No. 197] is SUSTAINED IN PART as follows:

    a. Plaintiffs must pay $8,695.59 in costs to defendants.

    b. The Clerk of Court is directed to enter a cost judgment of $8,695.59 against plaintiffs and in favor of defendants.

Dated: January 5, 2011

s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge

---

[5]This amount equals the total amount sought in Connolly's bill of costs ($22,006.19) minus the expert-witness fees included in that total ($13,350.60) plus the single-day witness fee ($40) authorized under 28 U.S.C. § 1821(b).